UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARGARITE CONSOLMAGNO, :
      Plaintiff, :
 :
v. : Civ. No. 3:11cv109 (PCD)
 :
HOSPITAL OF ST. RAPHAEL; :
HOSPITAL OF ST. RAPHAEL SCHOOL :
OF NURSE ANESTHESIA; and :
ANESTHESIA ASSOCIATES OF :
NEW HAVEN, P.C., :
      Defendants. :

## CONSOLIDATED RULING ON DEFENDANTS' PENDING MOTIONS TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND

The Plaintiff, Margarite Consolmagno, brought this action for declaratory and injunctive relief and for damages against the Defendants, the Hospital of St. Raphael ("HSR"), the Hospital of St. Raphael School of Nurse Anesthesia (the "School"), and Anesthesia Associates of New Haven, P.C. ("AANH"). Currently pending before the Court are: (1) HSR's motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Plaintiff's First Amended Complaint, [Doc. No. 32]; (2) the joint Rule 12(b)(6) motion of the School and AANH [Doc. No. 45]; (3) the Plaintiff's cross-motion[1] for leave to amend her complaint in order to add a new theory of liability and additional factual allegations [Doc. No. 36]; and (4) the Plaintiff's motion to strike the School's and AANH's reply submission [Doc. No. 52]. For the reasons stated herein, HSR's motion [Doc. No. 32] is **granted,** the Plaintiff's cross-motion [Doc. No. 36] is **denied**, and the School and AANH's motion [Doc. No. 45] is **denied**. The Plaintiff's motion to strike [Doc. No. 52] is **denied**.

---

[1] Although HSR has opposed the cross-motion, the School and AANH have not.

I. BACKGROUND

Taking the facts the Plaintiff has pleaded in her First Amended Complaint as true and drawing reasonable inferences in her favor, see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009), she alleges the following. In May 2009, the Plaintiff, a longtime registered nurse and holder of an advanced degree in nurse anesthesia, enrolled in the Anesthesia Educational Program ("Program") of the School in order to obtain Certified Registered Nurse Anesthetist (CRNA) status. (First Am. Compl. ¶¶ 8-9.) AANH owns and operates the School. Id. ¶ 6.

A. The relationship between the School, the Program, and HSR. A March 2004 Affiliation Agreement ("Agreement") governs the relationship between HSR, the School, and the Program.[2] The Agreement calls for the Program to assign students to HSR for clinical internship experience as part of the Program's curriculum. (Agreement ¶ 1.) Program participants use HSR equipment and facilities, id. ¶ 11, but School faculty supervise them, id. ¶ 5, and the School's malpractice insurance covers them, id. ¶ 13. Program participants must adhere to HSR's policies, rules, and regulations, and the School must instruct the participants on these requirements and enforce compliance. Id. ¶ 9. Both the School and HSR can terminate any student's involvement in the clinical elements of the Program. Id. ¶ 7.

The Agreement states that a student in the Program "is not to be considered under any circumstances as an employee or agent of [HSR] and shall not receive or be entitled to receive any compensation from [HSR] in connection with the experience." Id. ¶ 12. Finally, in the

---

[2] The Plaintiff did not include the Agreement as an exhibit to her pleadings. HSR, AANH, and the School included it as an exhibit to their respective motions to dismiss. Because the Plaintiff manifestly relied on the agreement in crafting her complaint, the Court considers it in this posture without converting HSR's motion into one for summary judgment. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-154 (2d Cir. 2002).

Agreement, HSR "agrees and warrants that . . . it will not discriminate or permit discrimination against any person . . . on the grounds of . . . sex . . . in any manner prohibited by the laws of the United States or the State of Connecticut[.]" Id. ¶ 27.

      B.      The School's compensation, grading, and sexual harassment policies. The School also promulgates a Student Handbook ("Handbook").³ The Handbook sets forth the $125 per week "Stipend / Student Salary" that "[s]tudents will receive." (Handbook at 23.) The Handbook states that AANH pays the students the stipend and provides malpractice insurance "[f]or the purpose of establishing medical legal responsibility only." Id. at 4. Program participants also receive vacation time and sick leave, and the Program cautions participants against outside employment and strictly limits the timing of any outside employment. Id. at 31-32. The Handbook also details the School's sexual harassment policy and includes a section notifying Program participants of their "[r]ecourse under the law" if such harassment happens to them. Id. at 17-18.

    The Handbook specifies various academic and clinical requirements. Id. at 19-28, 35. The School defines a passing grade on formal examinations as 78 or above; 77 and below constitutes a failing examination. Id. at 20. After failing an examination, a student may retake the examination and, if she passes, avoid academic probation. Id. at 35. Failing the first retake results in academic probation and a second retake, with the score on the second retake averaged with that of the first retake; only a passing average score prevents dismissal from the Program, and the participant remains on academic probation until the next scheduled exam. Id. Upon a

---

³ The Court similarly considers the Handbook on the same basis as the Agreement. See note 2, supra.

3

second failed examination, regardless of a participant's status on academic probation, the participant must retake the examination and, in combination with the failed examination, earn an average score of 78 or greater. Id. In order to complete the Program, a participant must, among other things, complete the academic program of study, fulfill all clinical requirements, attain passing examination grades "for all didactic exams / units," and obtain and keep current required certifications. Id. at 24.

  C. <u>The Plaintiff's experience</u>. After the Plaintiff entered the Program, she began a demanding schedule, working nine or more hours each weekday preparing and administering anesthesiology services to surgery patients. (First Am. Compl. ¶ 12.) Superiors reviewed her clinical work favorably. Id. ¶ 30. The Plaintiff also had academic responsibilities to fulfill in addition to these clinical requirements. Id. ¶ 12.

  The Plaintiff received vacation and sick leave benefits from the Program in accordance with the Handbook. Id. ¶ 20. But she did not receive the "Stipend / Student Salary" as required by the Handbook, nor did she receive health insurance benefits. Id. ¶¶ 14, 17-19. Other students in the Program received these promised benefits. Id. ¶¶ 17-19. AANH, the School, and HSR have not explained why the Plaintiff did not receive these benefits.

  On September 4, 2009, Odeed Geismar, a CRNA employed by AANH and member of the Program's admissions board, sexually harassed the Plaintiff. Geismar, upon seeing the Plaintiff exiting the hospital, said "Oh, wow," and touched the Plaintiff inappropriately. Id. ¶¶ 31-34. The Plaintiff told Geismar to stop, and Geismar left. Id. ¶ 34. The Plaintiff, upon returning home, immediately told her roommate; the roommate, a fellow participant in the Program, related a similar story about Geismar. Id. ¶ 35.

On September 8, 2009, the Plaintiff reported Geismar's inappropriate behavior to the Program's director, Judy Thompson. Thompson replied "[w]hat do you want me to do about this?" Id. ¶ 37. Thompson took no immediate action other than to report the matter to Dr. Philip Noto, chair of the anesthesia department at HSR and a faculty member at the School.[4] Id. ¶ 38. (See Handbook at 1, 8.) The Plaintiff was never made aware of any further action taken by the School, the Program, AANH, or the Hospital with respect to the incident. Id. ¶ 39.

Later in the day on September 8, 2009, Thompson informed the Plaintiff that she had failed an examination and would have to go on academic probation. Id. ¶ 40. Upon retaking the examination, the Plaintiff passed by a wide margin. Id. ¶ 41. Nevertheless, she remained on academic probation in violation of the Handbook's stated policy. Id. (See Handbook at 35.)

The Plaintiff's next formal examination took place on October 13, 2009. (First Am. Compl. ¶ 42.) Although the Plaintiff's supervisor initially agreed to afford the Plaintiff time to study prior to the examination, the supervisor reversed her position, ordered the Plaintiff to work on an anesthesia case, and did not permit the Plaintiff to finish her clinical responsibilities with enough time to arrive at the examination before it started. Id. ¶¶ 42-43. This delay, in combination with logistical complications at the testing site, aggravated the Plaintiff's test-taking anxiety.[5] Id. ¶ 43.

---

[4] An organizational chart in the Handbook lists Dr. Noto as Medical Director of the School and President of AANH but lists a different physician as chair of HSR's department of anesthesia.

[5] The Plaintiff appears to have anxiety around taking formal examinations, and this anxiety appears to affect her performance on such tests. (First Am. Compl. ¶ 29.) In September 2009, she began formal testing to determine whether she suffers from attention deficit disorder ("ADD"). Id. ¶ 30. Although this testing determined that she does not suffer from ADD, the Plaintiff continues to have difficulty with formal examinations. Id. ¶¶ 43, 45.

The Plaintiff, along with eight other students, failed this examination. Id. ¶ 44. Upon review of the test and curving of grades, only the Plaintiff received a failing grade; the remaining eight students passed. Id. ¶¶ 46-47. The Program does not appear to have afforded the Plaintiff the opportunity to retake the examination as required by the Handbook for a second failed examination. (Handbook at 35.)

The Plaintiff successfully completed several clinical assignments on October 14 and October 15. (First Am. Compl. ¶¶ 48-49.) On the afternoon of October 15, the Plaintiff met with Thompson, Dr. Noto, and assistant Program director Marianne Cosgrove. Id. ¶ 49. Thompson informed the Plaintiff that the Program planned to dismiss her. Id. Dr. Noto, when pressed for an explanation, stated "it is not working out." Id.

D.  The present action. The Plaintiff, through counsel, pursued her administrative remedies with the Equal Employment Opportunity Commission ("EEOC"). Her EEOC charge named only AANH as a respondent. After receiving her notice of right to sue on January 4, 2011, id. ¶ 53, the Plaintiff brought this action on January 20, 2011, alleging unlawful sex discrimination and retaliation in violation of 42 U.S.C. § 2000e et seq. (2006) ("Title VII"), id. ¶¶ 54-57. The Plaintiff seeks a declaration that she has suffered discrimination, back pay, punitive damages, front pay, reinstatement to the Program, and other consequential damages resulting from her termination from the Program. Id. ¶¶ 58-68.[6]

E.  The proposed amendment. After HSR moved to dismiss on April 8, 2011, the Plaintiff cross-moved for leave to amend her pleadings. The Plaintiff's Proposed Second

---

[6] The Plaintiff's First Amended Complaint numbers the paragraphs in her prayer for relief from 1-10; the Court will refer to them as though they were consecutively numbered along the lines of the rest of the First Amended Complaint.

Amended Complaint added one new factual allegation, asserting that participants in the Program, including the Plaintiff, were third-party beneficiaries of the Agreement. (Proposed Second Am. Compl. ¶ 25.) The proposed amendment also adds two claims for breach of the Agreement against HSR, id. ¶¶ 59-62, and additional prayers for relief based on these claims, id. ¶¶ 73-82.[7] The remainder of the Proposed Second Amended Complaint is identical to the First Amended Complaint.

## II. STANDARD

A. Motion to dismiss. The purpose of a Rule 12(b)(6) motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). In ruling on a motion under Rule 12(b)(6), the court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp, 482 F.3d 184, 191 (2d Cir. 2007).

The district court may dismiss a claim under Rule 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

---

[7] The Plaintiff's Proposed Second Amended Complaint numbers the paragraphs in her prayer for relief from 1-20; the Court will refer to them as though they were consecutively numbered along the lines of the rest of the Proposed Second Amended Complaint.

For the purposes of a motion to dismiss, the court must take all of the factual allegations in the complaint as true. However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions." Bell Atl., 550 U.S. at 555.

B.      Leave to amend. Leave to file amended pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." State Teachers Retirement Fund v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981). A proposed amendment "is futile if the proposed claim could not withstand a [Rule 12(b)(6) motion to dismiss.]" Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002).

**III.    MOTIONS TO DISMISS**

A.      AANH and the School. AANH and the School move to dismiss, arguing that the Plaintiff has not alleged sufficient facts to suggest that she was an employee and, therefore, has failed to state a Title VII claim. This Court disagrees.

In order to survive a Rule 12(b)(6) motion on her Title VII claim, a plaintiff must allege that her employer engaged in an unlawful employment practice. 42 U.S.C. § 2000e-2(a) (emphasis added). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year," 42 U.S.C. § 2000e(b), and defines an

"employee" as "an individual employed by an employer," 42 U.S.C. § 2000e(f).

In order to determine whether a plaintiff comes within these somewhat circular definitions, a court first looks to whether the employer hired the plaintiff, O'Connor v. Davis, 126 F.3d 112, 115 (2d Cir.1997), by asking whether the plaintff "received direct or indirect remuneration from the alleged employer," Pietras v. Bd. of Fire Comm'rs, 180 F.3d 468, 473 (2d Cir.1999) (internal quotations omitted). "[S]alary or other wages; employee benefits, such as health insurance; vacation; sick pay; or the promise of any of the foregoing" indicate sufficient "financial benefit" to show that the plaintiff has been "hired." York v. Assn. of the Bar of the City of New York, 286 F.3d 122, 126 (2d Cir. 2002) (citing O'Connor, 126 F.3d at 116) (emphasis added). See also United States v. City of New York, 359 F.3d 83, 97 (2d Cir. 2004) (citing Pietras, 180 F.3d at 473) ("[A] person need not receive wages in order to be considered an employee under Title VII."). If a plaintiff shows sufficient "financial benefit" demonstrating that a "hire" has occurred, the court next looks to the factors identified in Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989).[8] O'Connor, 126 F.3d at 115 (citing Reid, 490 U.S. at 751-52).

Here, the Plaintiff has pleaded that AANH and the School, as stated in the Handbook,

---

[8] The factors are, primarily, "the hiring party's right to control the manner and means by which the product is accomplished," and, secondarily, "the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." O'Connor, 126 F.3d at 115 (citing Reid, 490 U.S. at 751-52).

9

promised her a salary and health insurance.⁹ (First Am. Compl. ¶¶ 14, 17-19.) Whether she received either is immaterial; the promise suffices to establish a "financial benefit" indicating that AANH "hired" her.¹⁰ See, e.g., York, 286 F.3d at 126. The Plaintiff has further pleaded that she received vacation time and sick time. (First Am. Compl. ¶ 20.) See York, 286 F.3d at 126. Taken together, these allegations raise the Plaintiff's claim that AANH "hired" her above the speculative level.

That she also bore the label "student" does not mean that AANH and the School could not have "hired" the Plaintiff. Title VII can encompass such mixed educational and employment relationships, including postgraduate medical training, EEOC Dec. No. 88–1, 1988 WL 192714, at *1, 6-7 (June 27, 1988), and graduate student education, Cuddeback v. Fl. Bd. of Educ., 381 F.3d 1230, 1234–35 (11th Cir. 2004); Summa v. Hofstra Univ., No. CV 08-0361 (WDW), 2011 WL 1343058, at *10 (E.D.N.Y. April 7, 2011) (citing Bucklen v. Rensselaer Polytechnic Inst., 166 F. Supp. 2d 721, 725 (N.D.N.Y. 2001)); Ivan v. Kent State Univ., 863 F. Supp. 581, 585 (N. D. Ohio 1994), aff'd 92 F.3d 1185 (6th Cir. 1996) (table). This Court concludes that the Plaintiff has pleaded facts suggesting that AANH and the School "hired" her, notwithstanding her status

---

⁹ AANH and the School have challenged these allegations. At this stage, the Court takes them as true. Moreover, although AANH and the School are private parties, the Plaintiff's entitlement to a stipend finds persuasive support in the federal statute governing student-employees of the federal government which classifies "student nurse[s]," such as the Plaintiff, as "student-employee[s]" entitled to stipend compensation. 5 U.S.C. § 5351(2)(A).

¹⁰ AANH and the School argue that the fact that the Plaintiff never received the promised stipend means that she cannot have been "hired" and precludes her from Title VII "employee" status. AANH and the School accordingly appear to argue that wrongfully withholding promised pay and benefits insulates an employer from Title VII liability. Even if binding authority did not foreclose this argument, this Court would conclude that Title VII's "broad remedial purpose" could not countenance accepting it here. See, e.g., Diana v. Schlosser, 20 F. Supp. 2d 348, 354 (D. Conn. 1998).

as a student, sufficient to withstand the motion to dismiss.

The Plaintiff has also pleaded sufficient facts to show that the relationship between her, AANH, and the School satisfies the Reid factors. Specifically, the Plaintiff has pleaded that AANH and the School possessed the "right to control the manner and means" of the Plaintiff's performance of anesthesia services (see, e.g., First Am. Compl. ¶¶ 11-13; Handbook at 4), had the right to assign her projects and exclusive discretion to determine her working hours (see, e.g., First Am. Compl. ¶¶ 11-13, 42-43), that the Plaintiff's work was within the regular scope of AANH's business (see id. ¶¶ 11-13, 15, 21), and that AANH and the School promised the Plaintiff employee benefits (id. ¶¶ 14, 17-19). AANH and the School have not argued that these allegations do not satisfy the Reid factors. Accordingly, this Court concludes that the Plaintiff has pleaded sufficient facts to raise her status as an "employee" protected by Title VII above the speculative level.[11] The Plaintiff may pursue her Title VII claims against AANH and the School.[12]

    B.    HSR. HSR also moves to dismiss, arguing (1) the Plaintiff has not alleged sufficient facts to suggest that she was an employee instead of a student; (2) had the Plaintiff successfully pleaded that she was an employee of AANH and the School, she did not plead sufficient facts to show that she was an employee of HSR; and (3) the Plaintiff's failure to name

---

[11] To the extent that AANH and the School also move for a more definite statement, it is denied. The First Amended Complaint is not "so vague or ambiguous that [AANH and the School] cannot reasonably be required to frame a responsive pleading." See Fed. R. Civ. P. 12(e).

[12] Whether AANH's and the School's reply submission was timely filed or is properly before the Court does not affect this result. Accordingly, in the absence of prejudice to the Plaintiff caused by consideration of the reply submission, striking it is not warranted.

HSR as a respondent in her EEOC charge means that she has not exhausted her administrative remedies and cannot proceed with her Title VII claims. This Court agrees with HSR as to its exhaustion argument.[13]

Generally, a Title VII plaintiff may only sue a defendant she has already named in her administrative charge filed with the EEOC. See 42 U.S.C. § 2000e-5(f)(1) (limiting aggrieved party's right to sue to "the respondent named in the charge"). The Plaintiff concedes that she, acting through counsel, failed to name HSR in her EEOC charge. Rather, she invokes the "identity of interests" exception to this requirement recognized in Johnson v. Palma, 931 F.2d 203 (2d Cir. 1991).

A plaintiff who has failed to name a defendant in her EEOC charge may nonetheless pursue a Title VII claim against that defendant "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." Johnson, 931 F.2d at 209. This exception protects "parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements . . . so as not to frustrate Title VII's remedial goals." Id. A court determines whether an "identity of interest" exists by looking to four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the

---

[13] Because this Court agrees with HSR as to this argument, this ruling will not address HSR's alternative bases for dismissal.

12

complainant is to be through the named party.

Id. at 209-10 (quoting Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977)). A court may also look to whether the plaintiff had a lawyer during the administrative proceedings, Maturo v. National Graphics, Inc., 722 F. Supp. 916, 925 (D. Conn. 1989),[14] and whether the defendant had actual notice of the plaintiff's charge, Vital v. Interfaith Med. Ctr., 168 F.3d 615, 619-620 (2d Cir. 1999) (citing Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890, 905 (7th Cir. 1981)).

The first two Johnson factors weigh strongly in HSR's favor. First, the Plainitff, by filing an EEOC charge solely against AANH, evidently understood that AANH and HSR were separate entities. Given that the Plaintiff worked long hours on HSR's premises (see First Am. Compl. ¶¶ 11-12; Agreement ¶ 1), she could easily have ascertained or surmised that HSR may have played some role in her experience or possessed some supervisory power over AANH and the School. Second, because HSR retains the right to dismiss Program participants (Agreement ¶ 7) and prescribe rules for the School to enforce among Program participants, id. ¶ 9, HSR's interests diverged from AANH's and the School's. Not naming HSR in the EEOC complaint deprived the agency of the opportunity to investigate which entity made the decision to dismiss the Plaintiff

---

[14] District courts have split over whether pro se status before the agency is a threshold issue precluding application of the "identity of interests" test. Compare, e.g., Anderson v. Derby Bd. of Educ., 718 F. Supp. 2d 258, 275 (D. Conn. 2010) (holding that pro se status at the administrative stage is required before applying "identity of interests" exception) with, e.g., Olvera-Morales v. Sterling Onions, Inc., 322 F. Supp. 2d 211, 216 (N.D.N.Y. 2004) (applying "identity of interests" exception when experienced Title VII counsel failed to name respondent before EEOC). In the absence of Second Circuit authority imposing pro se status as a threshold requirement, this Court considers whether a plaintiff had counsel before the EEOC a non-dispositive factor in determining whether to apply the "identity of interests" exception. Williams v. Quebecor World Infiniti Graphics, Inc., 3:03cv2200 (PCD), 2007 WL 926901, at *3 (D. Conn. Mar. 23, 2007).

from the Program and whether the dismissal resulted from failure to adhere to School standards, HSR standards, or both. HSR was therefore far from "unnecessary" to the EEOC proceedings. See Johnson, 931 F.2d at 209-10.

The second two Johnson factors weigh in the Plaintiff's favor. HSR makes no assertion that it suffered actual prejudice because the Plaintiff did not name it in her EEOC charge. And it appears from an organizational chart appearing in the Handbook that the Program participants were related to HSR only through their participation in the Program and relationship to AANH. (Handbook at 8.)

In addition to the Johnson factors, this Court notes that the Plaintiff concedes that she had counsel at the time of the EEOC charge, diminishing the need to protect her as a "part[y] not versed in the vagaries of Title VII and its jurisdictional and pleading requirements." See Johnson, 931 F.2d at 209. Similarly, the Court notes that the Plaintiff has not pleaded that HSR had actual notice of the EEOC charge. These additional factors weigh in HSR's favor.

The balance of these factors therefore counsels against applying the "identity of interests" exception here. Accordingly, because the Plaintiff did not name HSR in her EEOC charge, and because the "identity of interests" exception does not apply, this Court may not entertain her Title VII claims against HSR. See 42 U.S.C. § 2000e-5(f)(1). Those claims are dismissed.[15]

**IV.    LEAVE TO AMEND**

A.    Timing of amendment. As a threshold matter, the Plaintiff may seek to amend her

---

[15] The Plaintiff also argues that dismissing her claims against HSR is improper because of the possibility that discovery will uncover evidence permitting her to assert a viable claim based on sex discrimination by a federally funded educational institution. See 20 U.S.C. §§ 1681-88 ("Title IX"). The Plaintiff has not pleaded a Title IX claim, so this argument fails.

14

complaint absent a showing of good cause for failure to include her additional claims and factual allegations in earlier iterations of the complaint. Because the plaintiff promptly moved to amend within twenty-one days of service of HSR's motion to dismiss, allowing her to amend at this time without a showing of good cause advances the interests of justice, see Fed. R. Civ. P. 15(a)(2), and will "expedite determination of issues that otherwise might be raised seriatim . . . [and] . . . advance other pretrial proceedings," see id. advisory committee's note (2009).

HSR points to the Court's January 20, 2011 Scheduling Order [Doc. No. 3] and the parties' March 30, 2011 Joint Report of Rule 26(f) Planning Meeting [Doc. No. 31] ("Joint Report"), both demonstrating that the deadline for the plaintiff to amend her pleadings has passed.[16] HSR argues that the amendment, outside the time provided in the scheduling order, is therefore improper without a showing of "good cause." See Fed. R. Civ. P. 16(b)(4); Parker v. Columbia Pictures Industries, 204 F.3d 326, 340-341 (2d Cir. 2000). Regardless of the soundness of this general proposition, the plaintiff promptly moved for leave to amend within twenty-one days of service of HSR's motion to dismiss. As such, her motion was a timely response to the motion to dismiss. In this circumstance, the Court concludes that no showing of good cause for late amendment is required.[17]

In addition, given the early state of this litigation, the Court concludes that the Plaintiff's

---

[16] The Scheduling Order gives the deadline as March 21, 2011, and the Joint Report gives the deadline as March 20, 2011. (Joint Report at 8.) The unexplained discrepancy is immaterial.

[17] Although the plaintiff, having already amended her complaint once as of right, cannot point to Federal Rule of Civil Procedure 15(a)(1)(B) as authorizing this amendment without leave of the Court, the existence of such a rule allowing amendment without leave of the court in similar circumstances counsels strongly in favor of allowing the plaintiff leave to amend in this circumstance without a showing of good cause.

proposed amendment is not unduly delayed, was made in good faith, and will not prejudice AANH, the School, and HSR. Accordingly, this Court will permit the amendment unless it is futile.

  B.  Futility of amendment. Notwithstanding the propriety of the Plaintiff's motion for leave to amend without a showing of good cause, the Court denies the motion because the proposed amendment is futile.

  The Plaintiff proposes to add Connecticut state law contract claims asserting HSR's breach of the term in the Agreement "that . . . [HSR] will not discriminate or permit discrimination against any person . . . on the grounds of . . . sex . . . in any manner prohibited by the laws of the United States or the State of Connecticut." (Proposed Second Am. Compl. ¶¶ 59-62; Agreement ¶ 27.) Although the Agreement only binds HSR, the School, and AANH, the Plaintiff asserts that she may enforce it as a third-party beneficiary. (Proposed Second Am. Compl. ¶ 25.) She also implicitly asserts that she may do so directly, without pursuing administrative remedies first. See id. ¶¶ 59-62.

  In Connecticut,[18] "the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be . . . because the parties to the contract so intended." Dow & Condon, Inc. v. Brookfield Development Corp., 266 Conn. 572, 580–81, 833 A.2d 908 (2003). "[A] third party seeking to enforce a contract must allege and prove that the contracting parties intended that the promisor should assume a direct obligation to the third party." Stowe v. Smith, 184 Conn. 194, 196, 441 A.2d 81 (1981).

---

  [18] Neither HSR nor the Plaintiff challenges Connecticut law as the rule of decision for this claim.

In addition, "the law subsisting at the time the contract is made governs as if expressly referred to in the agreement . . . [and] . . . '[t]his principle embraces alike those which affect its validity, construction, discharge, and enforcement.'" All Brand Importers, Inc. v. Dept. of Liquor Control, 213 Conn. 184, 199, 567 A.2d 1156 (1989) (quoting Von Hoffman v. Quincy, 71 U.S. (4 Wall.) 535, 550 (1866)). At the time of the Agreement, as now, neither Connecticut nor federal law permitted an unqualified private right of action for employment discrimination; both required exhaustion of administrative remedies first. 42 U.S.C. § 2000e-5(f)(1); Sullivan v. Bd. of Police Comm'rs of Waterbury, 196 Conn. 208, 215, 491 A.2d 1096 (1985) (citing Conn. Gen. Stat. Ann. § 46a-99).

Against this backdrop, this Court concludes that the Plaintiff's Proposed Second Amended Complaint does not sufficiently allege that HSR, the School, and AANH intended to create a privately enforceable right to be free from employment discrimination which circumvents statutorily-mandated exhaustion requirements. Instead, the Agreement expressly incorporates "the laws of the United States [and] the State of Connecticut" concerning such discrimination. (Agreement ¶ 27.) The Plaintiff has not alleged facts showing that HSR, the School, and AANH nonetheless intended, by means of the Agreement, to permit her and her colleagues to bypass the carefully constructed Connecticut and federal statutory and administrative schemes surrounding employment discrimination.

Moreover, the Agreement purports to preclude application of <u>any</u> employment law protections against HSR by stating that all Program participants are students of the School, not employees or agents of HSR. (Agreement ¶ 12.) Without deciding whether this provision actually precludes a Program participant's suit under Title VII, or any other employment law

regime, against HSR, this provision does demonstrate that HSR, the School, and AANH did not intend to use the Agreement to expand the scope of HSR's liability for employment discrimination occurring in the Program. See id.

It follows that the Plaintiff has not alleged sufficient facts to show that HSR, the School, and AANH intended for the Agreement to create a promise which she could enforce directly. Nor has the Plaintiff pointed to any authority holding that similar contract language creates an enforceable obligation independent of statutory employment discrimination remedies. Accordingly, the Proposed Second Amended Complaint does not state a plausible claim for relief on a third-party beneficiary breach of contract theory, and the amendment is futile.

### V. CONCLUSION

For the foregoing reasons, HSR's motion to dismiss [Doc. No. 32] is **granted,** the Plaintiff's cross-motion for leave to amend her pleadings [Doc. No. 36] is **denied**, and AANH's and the School's motion to dismiss [Doc. No. 45] is **denied**. The Plaintiff's motion to strike AANH's and the School's reply submission [Doc. No. 52] is **denied**. The Clerk is directed to close the case against HSR.

SO ORDERED.

Dated at New Haven, Connecticut, October  11 , 2011

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court